IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KAREN WACONDA,

    Plaintiff,

v.                                                         CIV. No. 97-1507 JP/RLP

THE NEW MEXICO DEPARTMENT
OF HEALTH, a branch of the State of
New Mexico, JAKE CASTELLANO, in
his individual capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On October 6, 1998, Defendants New Mexico Department of Health and Jake Castellano filed a "Motion for Summary Judgement," (Doc. No. 26) under Fed. R. Civ. Pro. 56. After a careful review of the briefs and the relevant law, I have determined that Defendants' motion should be granted.

### I. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Applied Genetics Intern., Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with

evidence showing that there is a genuine issue of material fact. *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Id*.

**II      BACKGROUND**

On July 8, 1998, Plaintiff Karen Waconda filed her First Amended Complaint against Defendants New Mexico Department of Health ("DOH") and Jake Castellano arising from Plaintiff's termination from DOH. Plaintiff's Complaint alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Due Process Clause of the Fourteenth Amendment.

Plaintiff, a Native American, had been employed at DOH as Program Manager within the Bureau of Rural Health prior to her termination. She was supervised by Defendant Castellano. In October, 1996, Plaintiff attended a seminar in North Carolina. When Plaintiff returned to work, she submitted a voucher requesting per diem reimbursement for her out-of-state travel. She claims to have been unaware that her room charges had already been billed directly to the seminar sponsor.

In February, 1997, Plaintiff was asked to appear before a pre-termination hearing officer regarding the allegation that she had falsely reported lodging expenses in the amount of $166.00 to DOH and had retained reimbursement for those expenses. In March 1997, during the oral response hearing, Plaintiff stated that she had not seen the hotel bill and had been unaware of the reimbursement problem. After the hearing, Defendant Castellano obtained a copy of the hotel bill, which he did not provide to Plaintiff. On March 21, 1997, Defendant Castellano issued Plaintiff a Notice of Final Action and terminated her employment.

Count I of Plaintiff's Complaint alleges that Defendants terminated her in violation of Title VII. Count II alleges that Defendants violated her due process rights.

**III    DISCUSSION**

    A.    <u>Title VII Claim of Ethnic Discrimination</u>

Title VII discrimination claims are analyzed by applying the burden-shifting approach of *McDonnell-Douglas Corp. v. Green*, 411 U. S. 792, 802-04 (1973). Plaintiff must first establish a prima facie case of discrimination. If plaintiff can establish a prima facie case, the employer has the burden to come forward with a nondiscriminatory explanation for the action. If the employer presents such an explanation, the burden then shifts back to the plaintiff to show that the employer's reason is mere pretext and is unworthy of belief.

Plaintiff's Complaint asserts that two non-Native American employees who were similarly situated to her were not terminated for alleged financial improprieties. Defendants dispute this and argue that DOH's treatment of three other similarly situated employees defeats Plaintiff's claim. Plaintiff's Response inexplicably fails to discuss either of the two individuals Plaintiff referred to in Count I of her Complaint. Instead, in her Response Plaintiff merely denies that the three individuals mentioned by the Defendants are similarly situated. She contends that the only similarly situated individuals are persons, supervised by Defendant Castellano, who received "special consideration, office space, funding, staffing and who have an ancestry other than that of the Plaintiff." (Response at 15.)

        *1.    Prima Facie Case*

Plaintiff alleges that she was fired because she is Native American, not because she violated a work rule. "To establish a prima facie case on a claim of discriminatory discharge,

3

where the plaintiff was discharged for the purported violation of a work rule, the plaintiff must show that (1) he is a member of a protected class, (2) that he was discharged for violating a work rule, and (3) that similarly situated non-minority employees were treated differently." *Aramburu v. Boeing Comp.*, 112 F.3d 1398, 1403 (10th Cir. 1997) (citing *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir.1992)). The parties agree that Plaintiff is a member of a protected class and that she was discharged for violating a work rule, but they disagree on the third prong of the prima facie case.

The parties' disagreement stems from their dispute over the meaning of "similarly situated." An employee is "similarly situated" if the employee has the same supervisor and violated work rules of comparable seriousness. *Aramburu*, 112 F.3d at 1404; *compare Starks v. Coors Brewing Co. Inc.*, 954 F.Supp. 1463, 1467 (D. Colo. 1997) (reviewing pre-*Aramburu* Tenth Circuit law and stating, "in this Circuit the existence of different supervisors is merely a factor that the fact finder may consider and not a dispositive determinant in every case."). "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated." *Aramburu*, 112 F.3d at 1404.

With these standards in mind, I will address all the individuals who are alleged to be similarly situated to the Plaintiff.

                                                   *a.    Defendant Castellano*

In Count I of her Complaint, Plaintiff alleges that Defendant Castellano is similarly situated to her and that he misused a State gasoline credit card for his personal business but failed to receive any discipline. Under *Aramburu*, however, Defendant Castellano is not similarly

situated to Plaintiff because he and the Plaintiff did not have the same supervisor.[1] Also, Plaintiff's own deposition testimony reveals that the policy and procedures concerning the use of gasoline cards were implemented after Defendant Castellano's alleged improper use of a gasoline card. (Defendant's Ex. K at 131.) This precludes a finding that Defendant Castellano and Plaintiff were similarly situated. *See Aramburu*, 112 F.3d at 1404 (similarly situated employees are those who violated work rules of comparable seriousness); *E.E.O.C. v. Flasher*, 986 F.2d 1312, 1320 (10th Cir. 1992) (events occurring at a time when the company's attitudes toward certain infractions were different may explain apparently disparate treatment).

Furthermore, Plaintiff offered no admissible evidence that Defendant Castellano actually misused a state gasoline credit card. The only information in the record to support Plaintiff's allegation is inadmissible hearsay. (Waconda Depo. Ex. K, at 130-31.) Defendant Castellano, however, submitted an uncontradicted affidavit stating he never misused a state gasoline card. (Castellano Aff. Ex. A.) Moreover, Plaintiff's own testimony, which was also based on hearsay, was that Defendant Castellano was reprimanded for the gasoline card incident. (Waconda Depo. Ex. K at 130-31.) This contradicts her allegation that Defendant Castellano was not disciplined.

Finally, Plaintiff did not argue in her Response that Defendant Castellano is similarly situated. There is no genuine issue of material fact on this point.

    b.    *Joseph Vega*

Plaintiff's Complaint avers that Joseph Vega was similarly situated and received favorable treatment. Plaintiff and Joseph Vega, however, were not similarly situated because they had

---

[1] The parties agree that Defendant Castellano was Plaintiff's supervisor.

5

different supervisors.[2]  *Aramburu*, 112 F.3d at 1404.  Also, Plaintiff offered no evidence that Mr. Vega's allegedly improper phone calls were actually personal long distance calls.  In her deposition, Plaintiff opined that they must have been personal calls since Mr. Vega is from Las Vegas and Plaintiff did not recognize the numbers.  (Waconda Depo. Ex. K, at 62-68.)  Plaintiff offered nothing more than speculation to support her allegation while Defendants offered Mr. Vega's affidavit as evidence that the phone calls to Las Vegas were not personal calls.  (Vega Aff. Ex. L.)

Although Plaintiff now claims to have been concerned about these calls beginning in the fall of 1996, (Waconda Depo. Ex. K at 63.), she continued to sign her approval on his phone calls at least until January, 1997.  (Waconda Depo. Ex. K at 68.)  While Plaintiff presently asserts that this was only because there was no detailed summary of the phone calls provided with the phone bill, (*id.* at 66), Plaintiff was the one in a position to request a detailed summary of the phone calls if she was concerned about their propriety.

Moreover, Plaintiff did not write Mr. Vega a memo questioning the phone calls until after she had received notice of her termination.  (Waconda Depo., Ex. K at 56-58; Waconda Aff. Ex. 1, ¶ 24, 25.)  It appears that Plaintiff was the person in the position to supervise Mr. Vega's phone calls and that, if she actually was concerned about his calls, she did not diligently review them or reprimand Mr. Vega.  Under these circumstances, Defendants' failure to terminate Mr. Vega provides no evidence of different treatment.  Thus, there is no admissible evidence that Mr. Vega was similarly situated to the Plaintiff and treated differently or that he was not reprimanded

---

[2] Defendant Castellano supervised Plaintiff, (Complaint, ¶ 7), and Plaintiff supervised Mr. Vega. (Waconda Depo. Ex. K.; Vega Aff. ¶ 2, Ex. L.)

6

for violating a work rule.

       *c.*  *Kim Kinsey, Anglo Male, and Hispanic Male*

  Defendants offer three individuals who they contend were similarly situated to Plaintiff: Kim Kinsey, a Native American woman; an unnamed Anglo male; and an unnamed Hispanic male. Defendants argue that the treatment of these three employees negates Plaintiff's claim of discrimination. However, Ms. Kinsey was not similarly situated to Plaintiff because she did not violate any work rule. *Aramburu*, 112 F.3d at 1404. While the record shows that the Anglo and Hispanic males violated work rules, (Martinez Aff. Ex. J), there is no evidence of who supervised these two individuals.

  Even if the Anglo and Hispanic males were supervised by Defendant Castellano, this evidence is irrelevant to the prima facie analysis. Defendants do not bear the burden of coming forward with evidence of similarly situated non-minority individuals who were treated the same as Plaintiff. Evidence of Defendants' treatment of these employees may be relevant, however, to the second and third prongs of the *McDonnell Douglas* analysis. *See Aramburu,* 112 F.3d at 1406 ("unfavorable treatment of [plaintiff] does not support an inference of improper animus when other minorities are accorded the same treatment as the non-minority employees.").

       *d.*  *Non-Native American employees supervised by Defendant Castellano*

  Contradicting the allegations in her Complaint, Plaintiff now contends that "there is no similarly situated individual employee to whom the [Plaintiff] can be compared to except for those individuals supervised by Mr. Castellano and to whom he gave special consideration, office space, funding, staffing and who have an ancestry other than that of the Plaintiff." (Response at 14-15.)

7

Plaintiff in her Response failed to identify these individuals or show that they violated any work rules. (Response at 15.) Although Plaintiff referenced her affidavit, which names individuals that allegedly received favorable treatment, there are no allegations that these individuals violated any work rules. (Waconda Aff. Ex. 1.)

Plaintiff has failed to establish a prima facie case because she did not show that any similarly situated non-minority individuals who violated a work rule received disparate treatment. *See* Fed. R. Civ. P. 56(e) (to survive a motion for summary judgement, the adverse party cannot rest "upon the mere allegations of denials of" the pleading, but "must set forth specific facts showing that there is a genuine issue for trial.").

### 2. *Legitimate nondiscriminatory reason*

Even if Plaintiff had established a prima facie case, Defendants met their burden of coming forward with a legitimate nondiscriminatory reason for terminating Plaintiff. Defendants say, quite simply, that they terminated Plaintiff because she filed a voucher requesting reimbursement for expenses she had not incurred. Although Plaintiff disputes that she had been previously disciplined regarding fraudulent vouchers, she does not dispute that she had been warned that she would be subject to disciplinary action if such action happened again. (Plaintiff's Response, p. 3, 8; Warning Memo from Judith Hurley, Ex. B.) The Notice of Final Action states that "[t]he basis for this final action is *your request and receipt of per diem for lodging and meals which you were not entitled to receive*." (Ex. F.) This statement is amply supported by a copy of the hotel invoice showing that the bill had been directly charged to the seminar sponsor, (Ex. E), and the Recommendation of the Hearing Officer, (Ex. G), which was adopted by the Personnel Board, (Ex. I). Although Plaintiff claims to have seen a hotel invoice stating a balance owed, which she

8

put on her credit card, (Waconda Depo. Ex. 4 at 93-96), Plaintiff has never produced a copy of this hotel invoice, credit card receipt, or credit card statement.

Plaintiff does not dispute that she signed a voucher requesting reimbursement, to which she was not entitled, of $166.00 for her out-of-state travel; she merely asserts that she was unaware that the seminar sponsor had already paid the bill until she received her Notice of Contemplated Action. Firing an employee for submitting a false voucher, even if the employee acted without fraudulent intention, is a legitimate nondiscriminatory reason for termination.

### 3. Pretext

The plaintiff's proof of pretext must consist of more than a mere refutation of the defendant's explanation. *Texas Department of Community Affairs v. Burdine*, 450 U. S. 248, 252-56 (1981). The plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256. "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

As evidence of pretext, Plaintiff cited only to her own affidavit. In it, Plaintiff pointed out that Defendants frequently moved Plaintiff's office, that Plaintiff's office was small, that Defendant Castellano gave assignments to Plaintiff's subordinate, that new equipment was not

9

given to Plaintiff, and that colleagues spoke Spanish in the workplace.[3] In Plaintiff's deposition, she observed that Plaintiff was the only employee who had to alert Defendant Castellano of changes in her weekly schedule, that Defendant Castellano had his secretary call twice to check up on Plaintiff while she was in meetings, and that Defendant Castellano approved travel for Mr. Vega but not for Plaintiff. (Waconda Depo. Ex. 4 at 35, 37.)

However, these facts, and the reasonable inferences to be drawn from them, do not prove that Defendants "proffered non-discriminatory reason for [Plaintiff's] termination is unworthy of belief." *Wilson v. Utica Park Clinic, Inc.*, No. 95-5060, 76 F.3d 394, 1996 WL 50462 (10th Cir. Fed. 7, 1996) (unpublished) (citing *Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995)). While these facts may reveal that Defendant Castellano disliked or mistrusted Plaintiff, "[a]n animus not related to [Plaintiff's] ancestry, such as a personality conflict" with Defendant Castellano, "is not evidence of improper discrimination." *Aramburu*, 112 F.2d at 1406. Nor do

---

[3] It does not appear that Defendant Castellano was responsible for providing most of the alleged favorable treatment to other employees. For instance, Plaintiff asserts that support staff was taken away from her and assigned to Defendant Castellano and Maria Romero, (Waconda Aff. Ex. 1, ¶ 12), but Plaintiff's deposition testimony suggests that it was Wayne Powell, not Defendant Castellano, who failed to fill staff positions under Plaintiff's section. (Waconda Depo. Ex. 4 at 32.) It is also unclear who provided new equipment to Maria Romero and Defendant Castellano instead of to Plaintiff. (Waconda Aff. Ex. 1, ¶ 13.) While Plaintiff complains that Defendant Castellano instructed Plaintiff's immediate supervisor, Wayne Powell, to move Plaintiff's office and deny her request to move into a recently vacated office, Plaintiff's allegation is based on hearsay. (Waconda Aff. Ex. 1, ¶ 4.) Also, although Plaintiff claims that Maria Romero transferred Plaintiff's phone calls to her office and that Plaintiff's mail would appear in Ms. Romero's box, (Waconda Depo. Ex. 4 at 35-36), it is unclear how Defendant Castellano was responsible for Ms. Romero's actions. Plaintiff also contends that her coworkers and supervisor spoke Spanish in the workplace, but she does not state who was responsible for permitting this to continue or whether she ever complained to a supervisor about it. (Waconda Aff. Ex. 1, ¶¶ 14-16.) Furthermore, Plaintiff's affidavit reveals that she was not the only person excluded from the Spanish conversations, (Waconda Aff. Ex. 1, ¶ 17), which suggests that she was not singled out for such treatment on the basis of her ethnicity.

the alleged incidents "allow for a comparison which supports an inference that [Defendant] discriminated against [Plaintiff] on account of [her] ancestry." *Id*. This is because Plaintiff has failed to "demonstrate a nexus between the allegedly discriminatory acts and [Defendants'] decision to terminate her." *Id*. (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994)).

Moreover, the record reflects that the only other identified Native American employed at DOH, who also attended the North Carolina seminar but did not submit a travel voucher because she had no significant expenses from the seminar, is still employed at DOH. (Kinsey Aff. Ex. C.); *see Aramburu*, 112 F.2d at 1406 n. 4 ("An employer's similar or favorable treatment of protected employees does not support an inference of discriminatory animus.").

While Plaintiff alleges that she was fired for making a simple mistake, Title VII does not "ensure that employees will always be treated fairly or that they will be discharged only for meritorious reasons." *Archuleta v. Colorado Dept. of Institutions, Div. of Youth Services*, 936 F.2d 483, 487 (10th Cir. 1991).

Therefore, Defendants' Motion for Summary Judgment on Count I should be granted.

B. Due Process Claim

Although Plaintiff's Complaint alleges substantive and procedural due process violations, (Complaint, ¶ 61), in her Response Plaintiff abandoned her procedural due process allegations and asserted only substantive due process violations.[4] Judge Black recently followed the Sixth, Seventh, and Eleventh Circuits in holding that in non-legislative cases, only procedural due process claims are available to plaintiffs claiming pretextual employment termination. *See Roe v. Antle*, 964 F.Supp. 1522, 1533 (D.N.M. 1997). An executive act usually applies to a limited number of people, and often just a single person, while legislative acts normally apply to a vastly larger number of people. *See id.* at 1532. In this case, it is clear that the acts Plaintiff complains of are executive in nature because they affected only her. Relying on Judge Black's reasoning in *Antle*, which followed the law of three Circuit Courts of Appeals, I will grant Defendants' Motion for Summary Judgment on Count II.

---

[4] *See* Response at 22 ("Were this a proceeding on procedural due process, this theory would be accurate. However, the Plaintiff presents this Court with a *substantive due process* claim.") (emphasis added); *see also* Response at 16 ("the Defendants deny the Plaintiff *substantive due process* of law," "the conclusions drawn that betrayed the denial of *substantive due process*," and "[i]n support of their attempt to bar the Plaintiff's claim for violations of *substantive due process*, the Defendants rely on two cases."); Response at 17 ("In the case at bar, the Plaintiff claims that there occurred a violation of her *substantive due process* rights . . . ."); Response at 20 ("If the seemingly minor transgressions . . . . resulted in a [sic] unfair administrative review proceeding, then the *substantive due process* clause is offended."); Response at 21 ("When considered in light of the other improprieties presented above, the question of whether the *substantive due process* clause is offended by the procedure used in the termination and administrative review of Karen Waconda's termination . . . ."); Response at 23 ("The Defendants would have the Plaintiff admit that she presents a procedural and not *substantive due process* claim . . . . The Plaintiff has alleged facts, that if . . . taken as true, support that claim. In doing so, the *substantive due process* claim survives the Defendants qualified immunity.") (emphasis added).

IT IS THEREFORE ORDERED that Defendants' "Motion for Summary Judgment," (Doc. No. 26), is GRANTED.

_____
UNITED STATES DISTRICT JUDGE